UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZDISLAW LESNY,

    Plaintiff,

v.

P.O. MICHAEL KEEFE, #8436, P.O. SEAN DAILEY, #10890, P.O. WILLIAM MORIARTY, #6316, individually, and the CITY OF CHICAGO,

    Defendants.

No. 10 C 5895
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Zdislaw Lesny sued Chicago Police Officer Michael Keefe, Star No. 8436, Officer Sean Dailey, Star No. 10890, Officer William Moriarty, Star No. 6316, as well as the City of Chicago for what he claims were civil rights violations stemming from an arrest. Specifically, Lesny claims the officers used excessive force in effecting the arrest and then denied him medical treatment for injuries he suffered as a result of that force.

With basic discovery complete, Defendants move for summary judgment. For the reasons to follow, the motion is DENIED as to the excessive force claim but GRANTED as to the denial of medical care claim.

FACTS[1]

---

[1] Plaintiff did not provide a Local Rule 56.1(b)(3) statement responding to Defendants' statement of material facts. Plaintiff did, however, provide his own statement of additional material facts. To the extent these additional facts properly dispute

1

On September 16, 2009, Defendant Officers Keefe, Dailey, and Moriarty responded to a 911 dispatch call over the radio of a "man with a knife" in the vicinity of Sunnyside and Meade Avenues in Chicago. Keefe was the first to arrive on the scene. He spoke to two victims of the knife incident, one of which was a minor, "Walter." Walter stated that Plaintiff had placed a knife to his throat and threatened to kill him. There was a red mark on Walter's neck where Plaintiff had placed the knife, according to Officer Keefe. Officer Dailey described it as an actual laceration.

Dailey and Moriarty arrived shortly after Keefe, at which point the two victims repeated their story, consistent with the first telling, to the trio of officers. The victims stated that Plaintiff approached the victims in a green van, yelled at them, said he was going to kill them, and ultimately put the knife to the minor's throat. Two additional witnesses corroborated the account after Plaintiff was arrested.[2]

The victims of the knife incident said they knew Plaintiff to be one of their

---

Defendants' facts, I have considered them as responses to Defendants' asserted facts. In all other instances I have deemed Defendants' factual statements admitted.
2 Reading Defendants' statements of material facts leaves the reader with the distinct impression that the neutral witnesses corroborated the account of the victims *before* Defendants sought to arrest Plaintiff [paragraphs 8-13 describe the witnesses' account, and then paragraph 15 begins recounting the arrest itself with the transitional phrase "after these interviews...".] But reading the actual deposition testimony of one of the witnesses reveals that the officers only spoke to those witnesses *after* they had already arrested Lesny. See Dep. of Ryan Hughes p. 22, 5-9; p. 23, 5-10. As such, this information is irrelevant to the issue here, which turns on the facts known to the officers at the time of the arrest. The treatment of this fact – which fact would clearly be favorable to Defendant if the interview had happened before the arrest – is, at best, a troubling oversight. At worst, it is an outright misrepresentation. Though I opt not to order sanctions *sua sponte* for this one transgression (and it appears to be the only one), Defendants' counsel should not have to be reminded of their obligation to present the facts faithfully.

neighbors, and so showed the officers to Plaintiff's home. They stated to the officers that they believed Plaintiff may still have the knife on him.

Officer Dailey drove his patrol car up the alley and stopped it behind Plaintiff's home. Moriarty and Keefe walked with the victims down the alley to the back of Plaintiff's home.

What happened after that point is largely disputed. Both sides agree that Defendant Officers called Lesny to his back fence line to talk to him. Both sides also agree that Lesny turned his back to some degree on the officers.

From there, accounts diverge considerably. Lesny asserts that he turned around casually to open his gate and allow the officers inside. At that point, says Lesny, three officers needlessly tackled him to the ground, with at least one landing on top of his back. Two of the officers allegedly pulled at his arms while a third applied a choke hold for over a minute.

In contrast, the officers say Lesny turned upon hearing the word "knife" and ran toward his garage door. The officers told him to stop and gave chase. Plaintiff did not stop, say the officers, and instead made it to the door to his garage. Once there, the officers caught up but Lesny resisted arrested by bracing himself to the doorjamb of the garage. It was only at that point that they took him to ground, with one officer kneeling on him by necessity to prevent him from continued resistance or escape. The officers flatly deny the application of a choke hold, though they admit to using facial pressure points to induce compliance when Lesny had himself wedged in the garage door.

It is undisputed that in the course of going to the ground Lesny's head struck the

ground and was cut.

STANDARD OF REVIEW

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of explaining to the court the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party properly supports its motion for summary judgment, the moving party thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to

determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50, (1986).

DISCUSSION

*Excessive Force*

A fact finder assessing whether a police officer has used excessive force must analyze the claim under the Fourth Amendment's objective reasonableness standard. *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). This standard requires that a fact finder analyze whether the officers' actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight. *Id.* The "circumstances" are "only those circumstances known and information available to the officer at the time of his action." *Id.* Knowledge and facts gained after the fact have no proper place in a court's analysis of the reasonableness of the actor's judgment. *Id.* In short, when evaluating the reasonableness of an officer's actions, the fact finder must do so with blinders on—viewing the circumstances and facts only as they were known to the officer at the time. *Id.* And of course, the task here is not to conduct the reasonableness inquiry of a fact finder, but to analyze whether any reasonable jury could conclude that the officers' use of force was excessive given that all undisputed facts are viewed in the most favorable way for the non-movant.

In answering that question, a number of factors are relevant. The factors are those such as "the severity of the crime at issue, whether the suspect poses an

5

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Padula v. Leimbach*, 656 F.3d 595, 602-603 (7th Cir. 2011). It is also fair to consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. *Id.* In the end, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers[,] violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (quotations and citations omitted).

Even with this allowance, when the facts are most favorable to Plaintiff a jury could conclude that the force used was unreasonable. If it is true that when confronted by police he did nothing more than turn casually and begin to let them into his backyard, and if it is further true that he did not resist arrest once the officers made contact with him, then a reasonable jury could conclude that the (undisputed) takedown combined with the (heavily disputed) application of the choke hold was excessive.

I say this with the factors from *Padula* readily in mind: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Padula*, 656 F.3d at 602-03. On the one hand, the severity of the alleged crime at issue here is high. Even with the neutral Hughes witness corroboration thrown out, *see supra* n.2, the officers still were under the impression that Plaintiff had held a knife to the throat of a minor. It does not matter that Plaintiff disputes the fact of this happening or that he has accused the minor of being a "vandal" that has trashed his property. This is a point Plaintiff has failed to grasp. What matters is that there is no dispute that *the minor and his friend told this story to the police*. The officers were responding to a call of a man with a knife and were presented with two people, one a minor, telling a consistent story that an angry man had held a knife to the minor's throat. Indeed, there was a physical corroboration in the form of the mark or small cut on the boy's throat. That's a very serious crime indicating obvious dangerousness, and the police were well within reason to take the story at face value. It cannot be discounted and clearly weighs in favor of Defendant Officers.

Nevertheless, and again with the facts viewed in the light most favorable to Plaintiff, the remaining factors weigh strongly against Defendants. Plaintiff was conversing with police and did not flee or resist. While he could pose a potential threat to the officers based on the fact that he could still be holding the knife, he did not pose a threat to anyone else (he was in the backyard and the victims had been moved into the squad car). Moreover, even as to the officers themselves Plaintiff was not holding or threatening to use the knife. It was merely a possibility that he still had it. Beyond that Plaintiff was not a threat and did not appear to be one. On his telling, he was calm and conversant, not irate or irrational. Further, Plaintiff was not resisting or evading police.

7

In fact, he was attempting to be compliant by opening his back gate. If all of this is to be believed, a jury could conclude that the force applied (including the disputed choke hold) was unreasonable and excessive.

*Qualified Immunity*

Defendants argue that even if the force applied was excessive they should be granted qualified immunity. In ruling on a motion for summary judgment on the issue of qualified immunity, the court must consider two questions, in any order appropriate for the case. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)(modifying *Saucier v. Katz*, 533 U.S. 194, 196 (2001)). The first question is whether the facts construed in the light most favorable to the plaintiff establish that a constitutional right was violated by the officers' conduct. *Id.* at 232. The second question is to determine if the contours of the constitutional right are sufficiently clear that a reasonable police officer would understand that what he is doing violates that right. *Id.*

A plaintiff in an excessive force case bears the burden of overcoming the assertion of qualified immunity by producing a closely analogous case that established that he had a constitutional right to be free from the type of force the police officers used on him. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). Alternatively, Plaintiff could avoid this requirement by pointing out that the force used was "so plainly excessive" that Defendant Officers should have known they'd be violating the law. *Id.*

Plaintiff has offered three cases here, but none are persuasive because they are not closely analogous. Two of the cases *Herzog v. Village of Winnetka*, 309 F.3d 1041

8

(7th Cir. 2002) and *McAllister v. Price*, 615 F.3d 877 (7th Cir. 2010) are off-point because they involved nonviolent traffic incidents and accidents. The serious and violent nature of the underlying crime in this case makes *Herzog* and *McAllister* inapposite.

The third case, *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005), comes closer but is ultimately unhelpful to Plaintiff as well. In *Abdullahi*, like this case, three officers wrestled an arrestee to the ground and one of them knelt on his back. However, unlike this case, the arrestee died in the course of that arrest and it was undisputed that he had "severe injuries consistent with pressure or crushing trauma to the chest and neck area." *Id.* at 769. The Seventh Circuit reversed a grant of summary judgment to the defendant officers largely because the extent of the injuries could permit a reasonable jury to conclude that the force used was excessive. *Id.* No such injuries occurred in this case, and thus the inference that the force was excessive based on the extent of injury would be impermissible.

Even though Plaintiff's caselaw is unhelpful, qualified immunity is nevertheless unavailable to Defendants at this stage because the alleged conduct, viewed in the light most favorable to Plaintiff, was "plainly excessive." Accepting Plaintiff's description as true for purposes of summary judgment, Defendants not only wrestled and knelt on Plaintiff, but they also applied a choke hold, all without resistance or evasion on the part of Plaintiff. Choke holds are often characterized as deadly force, *see, e.g., Thompson v. City of Chicago*, 472 F.3d 444, 451-52 (7th Cir. 2006); *Lewis v. City of Chicago*, 2005 U.S. Dist. LEXIS 7617, *18 (N.D. Ill. Apr. 11, 2005), and even though Plaintiff was suspected of a violent offense, he was not (according to him) resisting or evading. It is unreasonable

to use potentially lethal force merely because police suspect him of a violent crime, without more. *Tenn. v. Garner*, 471 U.S. 1, 11-12 (U.S. 1985) ("Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used *if necessary to prevent escape*, and if, where feasible, some warning has been given." (emphasis added)).

Likely or not, a jury could believe Plaintiff's version of events and reasonably conclude that Defendant Officers' use of force was excessive.

*Denial of Medical Care*

Plaintiff appears to have abandoned his claim for denial of medical care. No facts are stated in support of that claim. Plaintiff does not address the issue at all in any of his summary judgment papers. Summary judgment on that claim, therefore, is granted.

CONCLUSION

Defendants' motion for summary judgment is DENIED for the excessive force claim but GRANTED on the issue of denial of medical care.

ENTER:

*/s/ James B. Zagel*
JAMES B. ZAGEL
U.S. DISTRICT JUDGE

September 18, 2012